UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
            :
KEREN MATANA,                        :
            :        13 Civ. 1534 (PAE)
                  Plaintiff,    :
            :        OPINION & ORDER
            -v-             :
            :
J. EZRA MERKIN, GABRIEL CAPITAL CORP.,   :
            :
                  Defendants.  :
           :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

On July 30, 2013, the Court issued a decision granting defendants' motion to dismiss the original Complaint in this case, with limited leave to amend. Dkt. 41 ("*Matana I*"). The original Complaint was dismissed largely on statute of limitations grounds, plaintiffs having brought this lawsuit, which arises out of the loss of a hedge fund's investments with Bernard L. Madoff, in 2013, more than four years after Madoff's Ponzi scheme was revealed. *Matana I* at 13. On August 5, 2013, Keren Matana (KM) moved for reconsideration of that decision. Dkt. 43. On August 6, 2013, the Court issued a decision denying the motion for reconsideration. Dkt. 48.

On August 15, 2013, KM filed its Amended Complaint. As pertinent here, it included a fraud claim, based on alleged misrepresentations and material omissions made by defendants to plaintiffs, as then-holders of investments in defendant's Ascot Fund. Dkt. 50. On November 22, 2013, the Court issued a decision (the "Decision") granting defendants' motion to dismiss the Amended Complaint. Dkt. 67. The Court assumes familiarity with that decision. Relevant here, the Court held that the Amended Complaint failed to adequately plead fraud. On December 6, 2013, KM moved for reconsideration of the portion of the Decision dismissing the fraud claim,

Dkt. 71, and an accompanying memorandum of law, Dkt. 75 ("Pl. Br."). On December 20, 2013, defendants filed an opposition. Dkt. 78 ("Def. Br."). On December 21, 2013, KM replied. Dkt. 79 ("Pl. Reply Br."). For the reasons that follow, KM's motion for reconsideration is denied.

## I. Applicable Legal Standard

The standard governing motions for reconsideration under S.D.N.Y. Local Civil Rule 6.3 "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Such a motion is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made." *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005); *see also Goonan v. Fed. Reserve Bank of N.Y.*, No. 12 Civ. 3859 (JPO), 2013 WL 1386933, at *2 (S.D.N.Y. Apr. 5, 2013) ("Simply put, courts do not tolerate such efforts to obtain a second bite at the apple."). On a Local Rule 6.3 motion, "a party may not advance new facts, issues, or arguments, not previously presented to the Court." *Polsby v. St. Martin's Press*, No. 97 Civ. 690 (MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000) (Mukasey, J.) (citation omitted). Generally, district courts will only amend or alter a judgment "to correct a clear error of law or prevent manifest injustice." *In re Assicurazioni Generali, S.P.A.*, 592 F.3d 113, 120 (2d Cir. 2010).

**II.    Discussion**

The Court assumes familiarity with the prior decisions in this case, and sets out here only those facts necessary to give context to the pending motion for reconsideration of the dismissal of the fraud claim.

The Amended Complaint bases its fraud claim on three sets of statements or omissions by defendants.  It alleges that defendants, (1) in Ascot Fund's financial statements for fiscal years 2006 and 2007, mischaracterized both Ascot's brokerage agreements and the investment advisory fees charged by defendant J. Ezra Merkin, Am. Compl. ¶¶ 6, 67–70; (2) in a series of "Quarterly Letters" sent to Benjamin Jesselson and other investors in Gabriel Capital, L.P. ("Gabriel"), a separate hedge fund that Merkin managed, misleadingly painted Merkin as "a true portfolio manager," and omitted to disclose the fact of investments with Madoff, *id.* ¶¶ 7, 72–86; and (3) omitted to report information that Merkin learned, or should have learned, about Madoff in 2007 and 2008, *id.* ¶¶ 90–98.  The Decision held that the Amended Complaint did not state a claim for fraud based on any of these three sets of representations.  KM now asks the Court to reconsider that holding as to the first and third set of statements.

**A.  Ascot Fund's Financial Statements**

The Court previously held that the Amended Complaint failed to plead that KM relied upon any of the identified representations in the Ascot Fund Financial Statements when KM ostensibly decided to hold, rather than seek to redeem, its investment in the Ascot Fund. Decision 18.  In other words, the Amended Complaint did not adequately plead that the Ascot Fund representations caused KM's injury.  *Id.*

KM asks the Court to reconsider this holding as to defendants' statement to investors that Ascot "has a prime brokerage agreement."  Pl. Br. 15–18 (citing Am. Compl. ¶¶ 6, 68).

According to KM, upon making this allegedly misleading statement, defendants took on a duty to clarify "that this prime broker [Madoff], not Merkin, managed the portfolio, executed his own trades, and took custody of all assets. . . . [T]hat a single broker [Madoff] was performing *all* functions . . . in other words that Ascot was not subject to the typical hedge fund structure." Pl. Br. 16–17 (emphases in original).  KM argues that defendants had a duty to make this clarification because, "'upon choosing to speak, one must speak truthfully about material issues,'" *Sapirstein-Stone-Weiss Found. v. Merkin*, 950 F. Supp. 2d 621, 627 (S.D.N.Y. 2013), *reconsideration denied* (July 11, 2013) (quoting *Caiola v. Citibank, N.A., New York*, 295 F.3d 312, 331 (2d Cir. 2002)), and that had defendants made a statement along these lines, KM would have redeemed.  Pl. Br. 17.

This argument fails as a basis for reconsideration, both because it is new and because it is unpersuasive.  Even assuming that the term "prime brokerage agreement" that defendants used was sufficiently unclear so as to mandate some form of correction, it does not logically follow that a clarifying statement would have contained the sweeping content that KM imagines and that KM claims would have caused it to redeem its investment.  KM supplies no authority to the effect that defendants were obligated to make any such corrective disclosure.

Nor does KM give the Court any solid reason to believe that, had there been a clarification along the lines that KM urges, KM would then have redeemed its investment.  Instead, KM's claim of reliance instead is vague and conclusory.  *See* Pl. Br. 17 ("There is no reason to suspect that Trattner would have been careful.").  Ascot Funds' "prime brokerage" statement is not by its nature material.  And the Amended Complaint does not plead any contextual facts (*e.g.*, a preexisting written investment philosophy, or a prior investment track record) that would corroborate KM's convenient claim that upon a correction of that particular

4

statement, it would have redeemed its investment. To the extent New York law continues to recognize "holder" claims in discrete contexts, such claims must be pled adequately and viewed with care by courts. That is because, unlike a claim based on an active event of a purchase or sale, a luckless investor's holder claim that a particular statement was one on which he relied in deciding not to sell carries an inherent risk of opportunism. KM has pled nothing to plausibly suggest that it would have redeemed its investment but for the Ascot Funds' reference to its "prime brokerage agreement."

### B. Gabriel's Quarterly Letters

As noted, KM's motion to reconsider does not urge the Court to reconsider its holding as to the Gabriel Quarterly letters.

### C. Omissions Regarding Madoff

The Amended Complaint alleges that Merkin breached his fiduciary duty to KM by failing to disclose six "disquieting facts" that he learned or should have learned about Madoff in 2007 and 2008, and that these omissions caused KM to retain its investment in Ascot Fund. Am. Compl. ¶¶ 87–98. The Decision noted that the Amended Complaint alleges that Merkin actually knew only one of these facts: that Madoff was conducting a substantial portion of his options activity over-the-counter, not on a regulated market. Am. Compl. ¶¶ 92–94; Decision 24. And the Court held that, as to that fact, the Amended Complaint did not adequately plead that Merkin's omission was done with fraudulent intent. Decision 24; *see also* Def. Br. in Support of Mot. to Dismiss the Amended Complaint, Dkt. 53, at 21-22.[1] KM now appears to argue that a

---

[1] The Court therefore had "no occasion to reach defendants' alternative challenge to KM's omission-based theory of fraud: that defendants did not have a fiduciary duty to KM, and therefore under New York law, there can be no liability for omissions because 'an omission does not constitute fraud unless there is a fiduciary relationship between the parties.'" Decision 25 n.4 (quoting *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 849 N.Y.S.2d 510, 512 (1st Dep't

person can commit fraud by failing to disclose a fact that he did not know, if he has either (1) motive and opportunity to commit fraud, or (2) been consciously reckless of the risk of error. Pl. Br. 7.

That argument also fails as a basis for reconsideration. First, it is new. Second, although some cases state that a representation made with "reckless indifference to error" can be the basis for a fraud claim under New York law—*see, e.g.*, *Burgundy Basin Inn, Ltd. v. Watkins Glen Grand Prix Corp.*, 379 N.Y.S.2d 873, 879 (4th Dep't 1976) ("Scienter, a necessary element of fraud, includes not only knowing falsehood but also a reckless indifference to error, a pretense of exact knowledge and the assertion of a false material fact susceptible of accurate knowledge, but stated to be true on the personal knowledge of the representer.") (citations omitted); *Terris v. Cummiskey*, 203 N.Y.S.2d 445, 446 (3rd Dep't 1960) ("Fraud includes pretense of knowledge when there is none and if a statement is recklessly made without knowledge or without genuine belief in its truth the statement may be actionable.")—plaintiffs have cited no law, and this Court is aware of none, which supports the proposition that an *omission* of an unknown fact, the ignorance of which is the product of recklessness, can be the basis for a fraud claim under New York law.

In any case, the Amended Complaint does not plead facts sufficient to permit the inference that Merkin, in failing to learn and therefore to disclose the "disquieting facts" about Madoff that he did not know, acted with fraudulent intent. KM's arguments to the contrary are

---

2007) *aff'd*, 12 N.Y.3d 553 (2009)). KM's arguments for reconsideration also does not require the Court to rule based on this alternative defense argument. That said, KM's claim that Merkin owed it fiduciary duties is quite unconvincing. KM was a shareholder of Ascot Fund, and KM has not alleged facts tending to show that the relationship between KM and Merkin was other than a standard, arms-length business transaction. *See HF Mgmt. Servs. LLC v. Pistone*, 818 N.Y.S.2d 40, 42 (1st Dep't 2006) ("[G]enerally no [fiduciary] relationship exists between those involved in arm's length business transactions.").

singularly unpersuasive. First, KM argues that Merkin had the "motive and opportunity" to commit fraud, *see Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 373, 406 (S.D.N.Y. 2010), because he stood to gain millions of dollars in fees and he controlled Ascot. But the very case that KM cites for this proposition, *Anwar*, holds that "[g]eneral profit-making motive alone is generally disclaimed as a sign of fraudulent intent." *Id.* at 407; *accord Chill v. General Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996) ("such a generalized motive . . . which could be imputed to any publicly-owned, for-profit endeavor, is not sufficiently concrete for purposes of inferring scienter"); *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) ("Incentive compensation can hardly be the basis on which an allegation of fraud is predicated.") (citations omitted); *In re Merkin*, 817 F. Supp. 2d 346, 357 n.8 (S.D.N.Y. 2011) (rejecting plaintiffs' "attempt to show scienter by pleading that Defendant Merkin had both motive and opportunity to commit the fraud via Defendant Merkin's receipt of significant management fees").

    KM also argues that Merkin's "failure to check" Madoff's publicly available Form ADV, which KM asserts that Merkin "had a duty to monitor," supplies the requisite strong inference of fraudulent intent. *See S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 110 (2d Cir. 2009) ("a strong inference of the requisite state of mind may arise where the complaint sufficiently alleges that the defendants . . . failed to check information they had a duty to monitor") (citation omitted). But the relevant portion of the Amended Complaint does not recite facts that would fairly give rise to this inference. The Amended Complaint alleges that "[i]n conducting due diligence on a registered investment advisor, it was well-settled industry practice" to review the Form ADV; that Merkin "had to know" that Madoff's statement in the Form ADV that he managed $17 billion in assets for just 23 accounts was false; and that Merkin therefore "violated his express obligations to use best efforts in the management of Ascot, and

his implied obligations of good faith and fair dealing, by failing to investigate these falsehoods." Am. Compl. ¶¶ 90–91. Read plainly, this pleads a lapse, but it does not plead fraud. Moreover, KM cites no law to establish that Merkin had a legal "duty to monitor," much less investigate, Madoff's public filings such that his failure to have done so would bespeak an intent to blind himself to obvious truths so as to give rise to an inference of fraudulent intent. *See S. Cherry*, 573 F.3d at 113 ("the factual allegations in the Complaint do not give rise to a strong inference that the alleged failure to conduct due diligence was indicative of an intent to defraud"). Merkin may well have been irresponsible or slipshod if he did not attempt to learn what was in Madoff's Form ADV; but irresponsibility does not equate to fraudulent intent.[2] *Id.* at 109 ("By reckless disregard for the truth, we mean 'conscious recklessness—*i.e.*, a state of mind approximating actual intent, and not merely a heightened form of negligence.'"); *see also In re Merkin*, 817 F. Supp. 2d at 357 ("allegations of Madoff-related red flags do not adequately plead scienter") (citing *In re Beacon Associates Litig.*, 745 F. Supp. 2d 386, 414 (S.D.N.Y. 2010)).

As noted, the one "disquieting fact" that the Amended Complaint pleads Merkin was aware of is that Madoff was conducting a substantial portion of his options activity over-the-counter, not on a regulated market. Am. Compl. ¶¶ 92–94. The Court previously held that "[t]he Amended Complaint does not plead, in other than a conclusory way, that Merkin's failure to disclose this fact to investors was done with fraudulent intent." Decision 24. KM now appears to argue that this is an instance in which "a strong inference of the requisite state of mind may

---

[2] In this vein, KM's claim that Merkin "had to know" that the claims in the Form ADV were false would appear to be equally true of any reader of that form. The Amended Complaint does not plead that Merkin had special knowledge about the number of Madoff's clients or his total accounts, save for its vague footnote that "it was common knowledge in Merkin's investment circle that Madoff claimed to manage over $17 billion in accounts for hundreds of, if not several thousand, advisory clients." Am. Compl. ¶ 91 n.6.

8

arise where the complaint sufficiently alleges that the defendants . . . knew facts or had access to information suggesting that their public statements were not accurate." *S. Cherry*, 573 F.3d 98 at 110; *see* Pl. Br. 8, 10.  But *South Cherry* does not hold that a knowing failure to correct a public statement automatically gives rise to an inference of fraudulent intent; it merely holds that such a situation "may" be the basis for an inference of fraudulent intent.  A knowing failure to correct a public statement may evince mere negligence.  And the Amended Complaint is not properly read as plausibly alleging fraudulent intent; the facts therein alleges scienter closer to negligence.  *See* Am. Compl. ¶ 94 ("Given Merkin's prior misstatements on this subject in his OMs, given the fact that Merkin lacked a diligence team to investigate Madoff's November 2007 representation, and given the fact that [the] foregoing misrepresentation greatly increased the risk of an investment in Ascot, Merkin had a duty to disclose it.").[3]

### D. Other Arguments

KM opens its brief by adopting opposing counsel's characterization at argument that the "gravamen" of the Amended Complaint is that KM was never told that the funds it invested with Merkin were actually being funneled to Madoff.  Pl. Br. 1–3.  KM appears thereby to reconceive of its Amended Complaint along these lines, *i.e.*, to claim that nondisclosure of Ascot Fund's connection to Madoff is the foundation of its holder-based fraud claim.

---

[3] It is not clear that Madoff's options revelation actually made Merkin's prior statements false. The Amended Complaint states that "Merkin represented that Ascot conducted its options activity in a regulated market." Am. Compl. ¶ 92.  But this appears to be inconsistent with the only relevant source to which KM cites, a prospectus from 2003 which states that Ascot "may engage from time to time in various types of options transactions . . . [t]his activity . . . *may* involve stock options on a registered option exchange and offsetting transactions in the underlying stock, or offsetting transactions in one or more options for stock." Decl. of David E. Bamberger, Dkt. 14, Ex. H at 7 (cited in Pl. Mem. in Opp. to Def. Mot. to Dismiss the Am. Compl., Dkt.  60, at 39).  This sentence provides notice of certain ways in which Ascot may conduct options transactions.  By its terms, however, it does not preclude Ascot from engaging in options transactions through other means.

Even assuming the Amended Complaint could be read to make such a claim and that KM's raising it expressly for the first time on a motion for reconsideration was permissible, this argument would clearly fail as a matter of law. Merkin's alleged failure to make this disclosure accrued at the time KM made its investments in Ascot Fund on October 1, 2002 and January 1, 2004. *Matana I* at 13. KM was therefore at liberty to claim that these decisions were prompted by the fraudulent omission of Madoff's role during the time period that a claim based on its investment in Ascot Fund was timely. But, as explained at length in *Matana I,* KM failed to timely bring suit based on its initial investment decision. *Matana I* at 12–19, 22–24, 26–30. Instead, KM and its counsel made a deliberate decision *not* to bring suit, in the hope of gaining relief from a pending regulatory investigation; by the time KM brought suit, any challenge to its initial investment decision was time-barred. *Id.* at 18–19.

KM may not rescue itself from this problem of its own making by reconceiving its claim that Madoff's involvement went undisclosed as a holder claim. To the extent that New York law recognizes holder claims, as this Court has predicted it would in discrete contexts, *see* Decision 16, such claims would perforce be based on new representations, or material omissions in the face of a new duty to disclose, that prompted a holder to retain, rather than redeem, its investment. To allow a holder claim based on the continued omission of a fact required to be disclosed at the point of an initial investment, however, would vitiate statutes of limitations as to purchasers' claims and present intractable problems of proof with regard to the element of causation. *See id.* at 13–14, 16. KM therefore cannot sustain a holder claim based on the notion that defendants failed all along to disclose Madoff's role.[4] For the same reasons, KM cannot

---

[4] KM claims that Merkin had a "continuing duty to disclose Madoff's role in Ascot," because his offering memoranda made "'partial or ambiguous statement[s], whose full meaning will only be made clear after [complete] disclosure.'" Pl. Br. 11–12 (quoting *Aetna Cas. & Sur. Co. v. Aniero*

sustain a holder claim based on the theory that Merkin had, but breached, a continuing duty to disclose that Madoff did not permit outsiders to conduct due diligence. *See* Pl. Br. 12–15.

KM makes a final Hail Mary argument: "that the unique market conditions of 2007–2008 required a level of disclosure, by fiduciaries, which may not have existed earlier." *Id.* 17. KM does not offer any law in support of this novel claim. And the paragraph of the Amended Complaint that it cites in ostensible support of this notion, ¶ 83, is far afield. It merely quotes from one of the Gabriel Quarterly Letters in which explained how he got through "a rocky 2007" and noted the possibility of an impending financial crisis. The Court therefore rejects KM's final bid to salvage its claims.

## CONCLUSION

KM's motion for reconsideration is denied. The Clerk of Court is respectfully directed to terminate the motion pending at docket number 71, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
_____
Paul A. Engelmayer
United States District Judge

Dated: February 3, 2014
       New York, New York

---

*Concrete Co., Inc.*, 404 F.3d 566, 582 (2d Cir. 2005)). KM does not clarify which "partial or ambiguous statements" it is referring to; how those statements could "only be made clear" by disclosing Madoff's role in Ascot; or why a claim along these lines is a proper claim, as opposed to a claim that was to be pursued, if at all, in the context of a timely challenge to KM's initial investment.

11